**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

In re: Chandrabhushan Anand
Case No. 8-25-73618-AST
Chapter 13

## FOURTH AMENDED CHAPTER 13 PLAN
Effective 12/01/2024

☑ **Check this box if this is an amended plan. List below the sections of the plan which have been changed:**

    2.1, 3.1, 3.2, Part 8

## PART 1: NOTICES

Debtors: This form sets out options that may be appropriate in some cases, but the presence of an option on the form does not indicate that the option is appropriate in your circumstance or that it is permissible in your judicial district. Plans that do not comply with the local rules for the Eastern District of New York may not be confirmable. If you do not have an attorney, you may wish to consult one.

Creditors: Your rights may be affected by this plan. Your claim may be reduced, modified, or eliminated. You should read this plan carefully and discuss it with your attorney. If you do not have an attorney, you may wish to consult one. If you oppose the plan's treatment of your claim or any provision of this plan, you or your attorney must file an objection to confirmation at least 7 days before the date set for the hearing on confirmation, unless otherwise ordered by the Bankruptcy Court. The Bankruptcy Court may confirm this plan without further notice if no objection to confirmation is filed. See Bankruptcy Rule 3015. In addition, you may need to file a timely proof of claim to be paid under any plan.

General: Unless otherwise ordered by the court, the amounts listed on a proof of claim filed before the filing deadline under Bankruptcy Rule 3002(c) control over any contrary amounts listed below.

1

**1.1: The following matters may be of particular importance.**

| Item | Included | Not Included |
|---|---|---|
| a. A limit on the amount of a secured claim, set out in Section 3.4, which may result in a partial payment or no payment at all to the secured creditor | | ☑ |
| b. Avoidance of a judicial lien or nonpossessory, non-purchase-money security interest, set out in Section 3.4 | | ☑ |
| c. Nonstandard provisions, set out in Part 8 | ☑ | |

**1.2: The following matters are for informational purposes.**

| Item | Included | Not Included |
|---|---|---|
| a. The debtor(s) is seeking to modify a mortgage secured by the debtor(s)'s principal residence, set out in Section 3.3. | | ☑ |
| b. Unsecured Creditors, set out in Part 5, will receive 100% distribution of their timely filed claim. | ☑ | |

## PART 2: PLAN PAYMENTS AND LENGTH OF PLAN

**2.1: The post-petition earnings of the debtor(s) are submitted to the supervision and control of the Trustee and the Debtor(s) shall pay to the Trustee for a period of months as follows:**

| Payment Amount | Commencing (Month and Year) | Ending (Month and Year) | Number of Months |
|---|---|---|---|
| $1,225.00 | 04/2026 | 09/2030 | 60 |

2.2: Income tax refunds. If general unsecured creditors are paid less than 100%, in addition to the regular monthly payments, during the pendency of this case, the Debtor(s) will provide the Trustee with signed copies of filed federal and state tax returns for each year commencing with the tax year 2025, no later than April 15th of the year following the tax period. Indicated tax refunds are to be paid to the Trustee upon receipt, however, no later than June 15th of the year in which the tax returns are filed.

**2.3 Irregular Payments.**

☑ None.

2.3B: In the event the Debtor(s) are required to make additional monetary contributions to meet their obligations under the confirmed plan, prior to the expiration of the Plan, the Debtor(s) shall be permitted to remit up to $2,500.00 to the Trustee as an additional payment to cure this defect without leave of the Court.

## PART 3: TREATMENT OF SECURED CLAIMS

### 3.1: Maintenance of payments (including the debtor(s)'s principal residence).

☑ Debtor(s) will maintain the current contractual installment payments on the secured claims listed below, with any changes required by the applicable contract and noticed in conformity with any applicable rules. These payments will be disbursed directly by the debtor(s).

| Name of Creditor | Last 4 Digits | Principal Residence | Description of Collateral | Current Installment Payment (incl. escrow) |
|---|---|---|---|---|
| Cenlar FSB | 4393 | ☑ | 9521 239 St Floral Park NY 11001 | $1,906.29 |
| U.S. Bank / Shellpoint | 0939 | | 29 Village Dr, Jericho NY 11753 | $2,690.40 |

### 3.2: Cure of default (including the debtor(s)'s principal residence).

☑ Any existing arrearage on a listed claim will be paid in full through disbursements by the Trustee. Interest will not be paid on the claims listed below unless otherwise ordered by the Court or referenced in Part 8 Nonstandard Plan Provisions below.

| Name of Creditor | Last 4 Digits | Principal Residence | Description of Collateral | Amount of Arrearage |
|---|---|---|---|---|
| Cenlar FSB | 4393 | ☑ | 9521 239 St Floral Park NY 11001 | $4,930 disputed — See Part 8 |

| Shellpoint Mortgage Servicing | 0939 | | 29 Village Dr, Jericho NY 11753 | $42,006.97 disputed — See Part 8 |
|---|---|---|---|---|

The arrearage figures above represent the Debtor's calculated amounts based on actual contractual P+I components and actual escrow advances for the period May 1, 2024 through September 1, 2025, subject to pending adjudication of Debtor's Objection to Claim No. 4 (Docket No. 42). The Trustee shall disburse cure payments based on these figures pending Court adjudication, with adjustment upon determination of the allowed arrearage.

**3.3: Modification of a mortgage secured by the debtor(s)'s principal residence.**

☑ None.

**3.4: Request for valuation of security, modification of under-secured claims, and lien avoidance.**

☑ None.

**3.5: Secured claims on real or personal property to be paid in full through disbursements by the Trustee.**

☑ None.

**3.6: Surrender of collateral.**

☑ None.

## PART 4: TREATMENT OF FEES AND PRIORITY CLAIMS

4.1: General. Trustee's fees and all allowed priority claims, including domestic support obligations other than those treated in §4.5, will be paid in full without post-petition interest.

4.2: Trustee's fees. Trustee's fees are governed by statute and may change during the course of the case.

4.3: Attorney's fees. The balance of the fees owed to the attorney for the debtor(s) is $0.

**4.4: Priority claims other than attorney's fees and those treated in §4.5.**

☑ None.

**4.5: Domestic support obligations.**

☑ None.

## PART 5: TREATMENT OF NONPRIORITY UNSECURED CLAIMS

Allowed nonpriority unsecured claims will be paid pro rata:

☑ Not less than 100% of the total amount of these claims.

## PART 6: EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**6.1: The executory contracts and unexpired leases listed below are assumed and will be treated as specified. All other executory contracts and unexpired leases are rejected.**

☑ None.

## PART 7: MISCELLANEOUS

7.1: Unless otherwise provided in the Order of Confirmation, property of the estate will vest in the debtor(s) upon completion of the plan.

7.2: Post-petition payments including but not limited to mortgage payments, vehicle payments, real estate taxes, income taxes, and domestic support obligations are to be made directly by the Debtor(s) unless otherwise provided for in the plan.

7.3: Throughout the term of this Plan, the debtor(s) will not incur post-petition debt over $2,500.00 without written consent of the Trustee or by order of the Court.

## PART 8: NONSTANDARD PLAN PROVISIONS

See attached Addendum to Part 8, incorporated herein by reference. (Pages A1- A5)

## PART 9: CERTIFICATION AND SIGNATURE(S)

I/we do hereby certify that this plan does not contain any nonstandard provisions other than those set out in the final paragraph.

_____
Signature of Debtor 1
Chandrabhushan Anand
Dated: April 14, 2026

NONE
Signature of Attorney for Debtor(s)

In re: Chandrabhushan Anand
Case No. 8-25-73618-AST
Chapter 13

# ADDENDUM TO FOURTH AMENDED CHAPTER 13 PLAN
## PART 8 – NON-STANDARD PROVISIONS

### 1. 100% Dividend Plan

This Plan provides for a 100% dividend to all allowed non-priority unsecured claims (estimated at approximately $2,500). All allowed claims shall be paid in full over the life of the Plan. The Debtor is solvent, possesses substantial equity in the subject property, and this Plan is proposed in good faith.

### 2. Dispute as to Total Debt – Opening Principal Balance Overstatement and Double-Counting of $50,000 Payment (Shellpoint)

The Debtor disputes the total debt of $513,233.33 asserted in Part 2 of Claim No. 4-3 on the following grounds:

(a) Incorrect Opening Principal Balance. The SLS modification letter dated March 11, 2022 conclusively establishes the interest-bearing principal balance as of March 1, 2022 as $167,029.85. After crediting the March and April 2022 installments actually paid, the correct interest-bearing principal balance at the opening of Shellpoint's Form 410A on May 1, 2022 is $166,501.78. Shellpoint's 410A opens instead at $172,394.80 — overstated by $5,893.02.

(b) Double-Counting of $50,000 Principal Component. The overstatement of $5,893.02 is within $0.01 of the principal component of the $50,000 post-petition wire transfer applied by Shellpoint on September 26, 2025, which was $5,893.03. Shellpoint artificially inflated the opening principal balance by the exact amount of the principal component of the $50,000 payment, then applied the $50,000 to reduce the balance — creating the appearance of a principal reduction while the opening balance had been inflated by that precise amount at the outset. The $50,000 principal component was thus double-counted, resulting in no net principal reduction to the Debtor's benefit.

A - 1

(c) Static Principal Balance. The principal balance in column M of the 410A remains completely frozen at $171,594.21 throughout the entire payment history despite principal payments being credited in column H — a mathematical impossibility under any standard amortization methodology.

| Item | Amount |
|---|---|
| Shellpoint total debt per Claim 4-3 Part 2 | $513,233.33 |
| Less: opening principal balance overstatement / double-counting of $50,000 principal component | ($5,893.02) |
| Less: attorney fees and costs — not yet adjudicated, not arrearage | ($7,849.70) |
| Less: projected escrow shortage — improper forward-looking cushion | ($2,944.97) |
| Less: unapplied funds per Shellpoint's own 410A last line | ($1,604.44) |
| **Total Adjustments** | **($18,292.13)** |
| **Debtor's Calculated Total Debt** | **$494,941.20** |

Confirmation of this Plan shall not constitute acceptance of the total debt figure, the interest-bearing principal balance, or any accounting position asserted by Shellpoint. All rights to seek judicial determination of the correct outstanding loan balance are expressly reserved.

### 3. Dispute as to Arrearage – Only Legitimate Arrears are Actual Missed Installments (May 2024 – September 2025)

The only legitimate prepetition arrearage consists of the actual contractual P+I components plus actual escrow advances for taxes and insurance made by Shellpoint for the period May 1, 2024 through September 1, 2025 (17 months) — the period during which no payments were made and no forbearance was in effect. The following table sets forth the Debtor's calculated arrearage:

| Due Date | Principal | Interest | Escrow | Total |
|---|---|---|---|---|
| 5/1/2024 | $294.35 | $682.48 | $1,483.13 | $2,459.96 |
| 6/1/2024 | $295.60 | $681.23 | $1,483.13 | $2,459.96 |
| 7/1/2024 | $296.87 | $679.96 | $1,483.13 | $2,459.96 |
| 8/1/2024 | $298.13 | $678.70 | $1,483.13 | $2,459.96 |
| 9/1/2024 | $299.41 | $677.42 | $1,483.13 | $2,459.96 |
| 10/1/2024 | $300.69 | $676.14 | $1,483.13 | $2,459.96 |
| 11/1/2024 | $301.97 | $674.86 | $1,483.13 | $2,459.96 |
| 12/1/2024 | $303.26 | $673.57 | $1,483.13 | $2,459.96 |

| | | | |
|---|---|---|---|
| 1/1/2025 | $304.56 | $672.27 | $1,483.13 | $2,459.96 |
| 2/1/2025 | $305.86 | $670.97 | $1,483.13 | $2,459.96 |
| 3/1/2025 | $307.18 | $669.65 | $1,483.13 | $2,459.96 |
| 4/1/2025 | $308.50 | $668.33 | $1,483.13 | $2,459.96 |
| 5/1/2025 | $309.83 | $667.00 | $1,665.96 | $2,642.79 |
| 6/1/2025 | $311.17 | $665.66 | $1,705.58 | $2,682.41 |
| 7/1/2025 | $312.52 | $664.31 | $1,705.58 | $2,682.41 |
| 8/1/2025 | $313.87 | $662.96 | $1,705.58 | $2,682.41 |
| 9/1/2025 | $315.24 | $661.59 | $1,705.58 | $2,682.41 |
| **TOTALS** | **$5,179.01** | **$11,426.10** | **$25,401.86** | **$42,006.97** |

The P and I components reconcile within rounding to Shellpoint's own Part 3 figures of $5,178.57 and $11,427.54 respectively, confirming the 17-month arrearage period. The escrow component reflects actual tax and insurance disbursements advanced by Shellpoint during the delinquency period per the 410A. All other amounts in Shellpoint's claimed arrearage of $54,871.90 are disputed as set forth below.

### 4. Dispute – Attorney Fees, Costs and Other Charges Are Not Arrearage

Shellpoint's claim includes attorney fees, foreclosure costs, title costs, court and filing costs totaling $7,849.70 accumulated in column P of the 410A. These amounts are not arrearage. They are asserted charges subject to adjudication as to allowability, reasonableness, and necessity before they may be included in any allowed claim. No such charges have been allowed by this Court. Confirmation shall not constitute allowance of any fee, cost, or charge. All rights under 11 U.S.C. § 506(b) and Fed. R. Bankr. P. 3002.1 to seek disallowance, reduction, or surcharge are expressly reserved.

### 5. Dispute – Projected Escrow Shortage is Not a Legitimate Arrearage

Part 3 of Claim No. 4-3 includes a projected escrow shortage of $2,944.97. This is a forward-looking administrative cushion and does not constitute a liquidated prepetition obligation properly includable in a proof of claim arrearage. See In re Telfair, 216 B.R. 591 (Bankr. S.D. Ga. 1997); In re Woodberry, 383 B.R. 373 (Bankr. D.S.C. 2008). All rights to seek disallowance of this amount are expressly reserved.

### 6. Dispute – Unapplied Funds per Shellpoint's Own 410A

The last line of Shellpoint's own Form 410A reflects $1,604.44 in unapplied/suspense funds — received by Shellpoint but applied to no installment component. The arrearage must be reduced by at least $1,604.44 on the basis of Shellpoint's own records. All rights to seek credit and proper application of these funds are expressly reserved.

A-3

### 7. Dispute – COVID-19 Deferred Principal Baseline Error (SLS/Shellpoint)

The CARES Act forbearance commenced April 1, 2020 and ran through January 1, 2022 (19 months total). SLS failed to defer the April 2020 installment of $2,002.83, causing the interest-bearing principal baseline to be overstated from the outset and inflating all subsequent interest accruals. The SLS modification letter of March 11, 2022 reflects a post-modification deferred amount of $299,692.17. The Debtor's records establish the correct deferred amount should be $301,944.25 — a difference of $2,252.08 traceable directly to the April 2020 deferral error. The deferred principal of $299,692.17 is acknowledged as a legitimate non-interest-bearing obligation due at maturity, sale, or refinance. All rights to seek correction of the baseline and all downstream consequences are expressly reserved.

### 8. Dispute – July 2020 Payment Reapplication

The Debtor made a payment of $2,003.00 in July 2020 during the CARES Act forbearance period. By letter dated January 8, 2021, SLS acknowledged that billing statements issued July through December 2020 may not have accurately reflected amounts paid. This payment was carried forward as an unapplied balance and was applied to subsequent installments through the suspense account as traced in the Debtor's payment reconciliation. To the extent Shellpoint has not properly credited this payment, all rights to seek reapplication and proper crediting are expressly reserved.

### 9. Dispute – Refused Tender August and September 2022

Shellpoint refused to accept the Debtor's tendered mortgage payments for August and September 2022 in the amount of $2,270.16 each, totaling $4,540.32. A creditor that wrongfully refuses a borrower's timely tender of payment may not thereafter include those months as missed or deficient installments in a proof of claim arrearage calculation. These two months do not constitute legitimate arrearage. All rights to seek exclusion of August and September 2022 from the arrearage calculation are expressly reserved.

### 10. Direct Payments Outside the Plan – Trustee Commission

Certain post-petition payments were made directly by the Debtor to secured creditors outside this Plan, including a $50,000 wire transfer dated September 26, 2025, and ongoing monthly installments, to maintain loan currency and reduce principal. These payments were not received or disbursed by the Chapter 13 Trustee. The question of whether the Chapter 13 Trustee's statutory commission under 28 U.S.C. § 586(e) attaches to such direct payments is reserved for determination by the Court. Confirmation preserves this position and shall not prejudice the Debtor's right to seek a Court ruling that no commission is owed on such direct payments.

### 11. Reservation of Rights – Cenlar FSB Claim

The Debtor disputes the arrearage and loan balance asserted by Cenlar FSB on the following grounds: (a) one month of principal and interest has been included in the arrearage notwithstanding that the payment was made on September 24, 2025 and should be treated as maintaining loan currency under §3.1 of this Plan; (b) Cenlar's own response to the Debtor's Objection to Claim concedes that the escrow component is based on projections rather than actual prepetition

A-4

obligations — constituting a judicial admission that the escrow cushion is improperly included in the arrearage; and (c) Cenlar has never provided a breakdown of the OPENING outstanding principal balance, rendering the claim deficient under Fed. R. Bankr. P. 3001 and not entitled to prima facie validity. The Debtor's previously filed Objection to Claim is incorporated herein by reference. All rights to seek full disallowance or reduction of Cenlar's claim are expressly reserved.

## 12. Disclosure – Distribution of Exempt Funds

Prior to filing the first Amended Plan, the Debtor distributed $10,000 from an exempt IRA account to a former spouse pursuant to a private matrimonial arrangement. This transfer was made solely from exempt, non-estate property and did not diminish the bankruptcy estate or prejudice any creditor. Because this Plan provides for a 100% dividend to all allowed claims, no creditor has been harmed. Confirmation shall not be construed as a commitment of exempt property beyond payments actually made.

## 13. General Reservation

Confirmation of this Plan shall not constitute an admission, waiver, or acceptance of any claim amount, principal balance, payment history, fee, charge, or accounting position asserted by any secured or unsecured creditor. All rights to object, seek reconciliation, seek judicial determination, or pursue appropriate remedies are expressly reserved and shall survive confirmation.

Dated: April 14, 2026

Chandrabhushan Anand, Debtor Pro Se
9521 239th Street, Floral Park, New York 11001
Tel: 516-551-5819 | Email: ctanand@gmail.com

A-5

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re: Chandrabhushan Anand

Case No. 25-73618

Chapter 13 ▾

Debtor.
-----------------------------------------------------------x

## CERTIFICATE OF SERVICE

The undersigned certifies that on ∴ *April* *2026* , a copy of
(Date of Service/Mailing)

*FOURTH AMENDED CHAPTER 13 PLAN .*

(Title of Document(s) served)

was deposited in an enclosed, properly addressed postage-paid envelope, and served by

Email

(Method of Delivery, e.g., Federal Express Overnight, U.S. Post Office Priority Mail,.....)

upon the following *[below specify the name and mailing address of each party served]*:

1. R. Goldstein (for Cenlar / CitiMortgage)
rgoldstein@msgrb.com
2. C. Galiano (for Cenlar / CitiMortgage)
cgaliano@msgrb.com
3. Krista M. Preuss, Trustee
info@ch13edny.com
4. Cenlar Bankruptcy
BKelectronicnotices@cenlar.com
5. Tammy Terrell, Esq. (Atty for Newrez)
tterrell@fkslaw.com
6. U.S. Trustee Program (Region 02 LI)
USTPRegion02.LI.ECF@usdoj.gov
7. mtgbk@newrez.com Nrewrez dba Shellpoint Mortgage Servicing
Dated: February 27, 2026

Dated: *April 14, 2026*

Signature
Print name: Chandrabhushan Anand
Address: 9521 239 St
         Floral Park New York 11001
Phone: 516 551 5819
Email: ctanand@gmail.com